*445 ORDER DISCHARGING ORDER TO SHOW CAUSE
PER CURIAM.
The matter before us is an order to show cause why sanctions should not be imposed. We issued the order to two members of The Florida Bar in this termination of parental rights (TPR) case. We are discharging the order to show cause without imposing any sanctions, but we write to address a recurrent problem that often thwarts our best efforts to expedite the disposition of juvenile dependency and TPR appeals. The problem that all too often interferes with our goal of expediting these cases is the failure of both the trial courts and counsel to inform us that trial counsel for one or both of the parents has been granted leave to withdraw and new counsel appointed to prosecute the appeal. In this TPR case, we issued an order to attorneys John Doe and Robert Roe[1] directing them to show cause in writing why they should not be sanctioned for failing to notify us for a period of more than four months about the identity of the attorney who was responsible for representing W.G. (the Father) in this appeal. After consideration of the written responses that we received from Mr. Doe and Mr. Roe, we deem it inappropriate to impose sanctions on these attorneys. However, we do offer some simple guidelines to the trial courts and The Bar concerning how this problem may be avoided in the future.
THE FACTS
The facts that led to our issuance of an order to show cause in this TPR case follow a pattern with which this court has become much too familiar. Mr. Doe was trial counsel for the Father. The trial court’s order terminating the Father’s parental rights was rendered on February 24, 2006. Mr. Doe filed a notice of appeal on March 17, 2006.
On March 30, 2006, the trial court entered an order that granted Mr. Doe leave to withdraw as counsel for the Father. A week later, on April 6, 2006, the trial court entered an order that appointed Mr. Roe as the Father’s appellate counsel. Unfortunately, the trial court did not furnish this court with copies of either of these orders. Mr. Roe promptly filed a notice of appearance on behalf of the Father in the trial court, but not in this court. The certificate of service on Mr. Roe’s notice of appearance indicated that he had served copies on five addressees, but this court was not one of them. We did not receive a copy of Mr. Roe’s notice of appearance until several months later.
On May 5, 2006, this court ordered the circuit court clerk to file a status report regarding record preparation and transmission. The clerk responded on May 11, 2006, and informed us that the record had been prepared up to the point of adding the transcripts. However, the clerk’s office reported that it was unable to complete the record because it had not received the transcripts. Upon receipt of the clerk’s report, we ordered Mr. Doe to advise this court of his efforts to have the record transcripts completed and forward *446 ed to the circuit court clerk. At that point, this court regarded Mr. Doe as counsel for the Father because Mr. Doe had filed the notice of appeal and we had not received any indication that another attorney had been substituted as appellate counsel.
On June 16, 2006, Mr. Doe filed a response to our order and stated that the requested transcripts had been filed with the circuit court clerk. Mr. Doe attached to his response a copy of the designation to the court reporter that he had filed along with the notice of appeal. Unfortunately, Mr. Doe did not inform us of the trial court orders granting him leave to withdraw and appointing Mr. Roe as appellate counsel. By the time we received Mr. Doe’s response, we had already received the record from the circuit court clerk. The record was received in this court on June 12, 2006. This court’s central staff attorney who was responsible for monitoring this case noted Mr. Doe’s response and “tickled” the file for the receipt of the initial brief.
When no brief was received, the Guardian ad Litem Program (GAL) moved for an order defining a briefing schedule. Counsel for the GAL served copies of this motion on Mr. Doe and on the Attorney General’s Office, but not on Mr. Roe. On July 21, 2006, this court entered an order granting the GAL’s motion and directing the Father to serve the initial brief within ten days. We served a copy of this order on Mr. Doe as counsel for the Father.
Still, no brief was filed, and we did not receive any response to our order from Mr. Doe. On August 10, 2006, we issued a second order directing Mr. Doe to serve the initial brief within ten days or risk sanctions. This time Mr. Doe responded with a letter that he sent to this court by facsimile on August 16, 2006. The letter said, in pertinent part: “I am not the attorney of record and as such, am not required to file a brief in the above case.” Mr. Doe also sent us copies of the trial court’s order granting him leave to withdraw, the order appointing Mr. Roe as appellate counsel, and Mr. Roe’s notice of appearance. Mr. Doe’s letter was the first notice this court had that Mr. Roe was responsible for representing the Father in this case. By the time we received Mr. Doe’s letter, the Father’s appeal had been pending for five months.
THE ORDER TO SHOW CAUSE
Upon receipt of Mr. Doe’s letter and the copies that were enclosed with it, we issued an order to Mr. Doe to show cause in writing why sanctions should not be imposed for his failure to notify this court promptly of the entry of the order granting him leave to withdraw and of the entry of the order appointing Mr. Roe as appellate counsel. We also directed Mr. Roe to show cause in writing why sanctions should not be imposed on him for his failure to notify this court promptly of his appointment as appellate counsel by filing a notice of appearance in this court. In addition, we directed Mr. Roe to show cause why sanctions should not be imposed for his failure to timely file the initial brief on behalf of the Father. Both Mr. Doe and Mr. Roe filed written responses. Before we consider these responses, it is appropriate to outline some of the special features of appeals in juvenile dependency and TPR cases and the heightened responsibilities assumed by appellate advocates in these matters.
SOME SPECIAL FEATURES OF APPEALS IN JUVENILE DEPENDENCY AND TPR CASES
The district courts of appeal are required by statute to give an appeal from an order terminating parental rights priority in docketing and to render a decision of *447 the appeal as expeditiously as possible. § 39.815(1), Fla. Stat. (2005). Florida Rule of Appellate Procedure 9.146(g) requires the appellate courts to expedite appeals in both juvenile dependency and TPR cases. The rule fulfills the statutory mandate of section 39.815(1). O.M. v. Dep’t of Children & Families (In re M.M.), 708 So.2d 990, 992 (Fla. 2d DCA 1998). Appeals in TPR cases are expedited to promote stability in children’s lives by preventing them from languishing in the foster care system. CM v. Dep’t of Children & Family Servs., 854 So.2d 777, 779 (Fla. 4th DCA 2003). “Achieving permanent stability in the child’s life is the paramount concern of the judicial process.” Id.
This court has traditionally taken a serious view of its responsibility to expedite appeals in juvenile dependency and TPR cases. Even before the legislature required that appeals in TPR cases be expedited in 1990,[2] this court’s policy was to expedite such appeals. See W.G. v. Dep’t of Health & Rehabilitative Servs. (In re C.G.), 609 So.2d 631, 632 (Fla. 2d DCA 1992). When a juvenile dependency or TPR case is filed in this court, our clerk sends an “IMPORTANT NOTICE” to counsel and to unrepresented parties to notify them of the special time requirements that apply to these cases. In pertinent part, this notice states:
This is a dependency appeal or one involving termination of parental rights, notice of appeal dated [date to be inserted here], which, pursuant to section 39.815(1), Florida Statutes (2005), and Florida Rule of Appellate Procedure 9.146(g), is given priority in docketing and will be decided expeditiously. Extensions of time for the preparation of transcripts, the record or briefs will be granted sparingly, and the case will be monitored for timely filings. Delays in the perfection of this appeal may result in sanctions for responsible parties.
Our clerk’s notice incorporates the warning that we published more than fourteen years ago in W.G., 609 So.2d at 632. In juvenile dependency and TPR cases, it is critically important to the parents, their children, and society that the courts make decisions that are not only legally correct but also timely rendered. For this reason, the appellate advocate who undertakes to represent a parent in a juvenile dependency case or a TPR case assumes a heightened responsibility. See S.A.T. v. Dep’t of Children & Families (In re S.K.A.), 702 So.2d 546, 548 (Fla. 2d DCA 1997). With these principles in mind, we turn now to a consideration of the responses to the order to show cause.
THE RESPONSES TO THE ORDER TO SHOW CAUSE
In Mr. Doe’s response, he correctly noted that he had fulfilled his professional responsibility as trial counsel by filing the notice of appeal and the other papers necessary to begin the appeal before being relieved as trial counsel. See O.M., 708 So.2d at 992-93 (describing the duty of trial counsel in a TPR case with respect to initiating the appellate process). In addition, once Mr. Doe understood that this court still regarded him as counsel for the Father, he promptly notified us of Mr. Roe’s appointment as appellate counsel for the Father and furnished us with copies of the pertinent documents.
Mr. Roe informed us that he needed to obtain additional hearing transcripts that were not contained in the original record in order to complete the preparation of the initial brief. We granted Mr. Roe an ex *448 tension of time to obtain the transcripts and to file the brief.
Both Mr. Doe and Mr. Roe seem to have assumed that this court received copies of the order allowing Mr. Doe to withdraw, the order appointing Mr. Roe as appellate counsel, and Mr. Roe’s notice of appearance soon after Mr. Roe’s appointment as appellate counsel. From our perspective, these assumptions appear to have been unwarranted. However, they apparently seemed reasonable to Mr. Doe and to Mr. Roe at the time.
Both Mr. Doe and Mr. Roe appear to have acted with diligence to discharge their professional responsibilities in this case. We do not believe that either of them intended to keep us in the dark about the identity of the attorney who was responsible for representing the Father on his appeal. For these reasons, we conclude that it would be inappropriate to impose sanctions on either Mr. Doe or Mr. Roe.
SOME GUIDELINES
This court cannot properly discharge its responsibility to expedite juvenile dependency and TPR cases if it does not know the identity of the attorney who is responsible for representing the parent or parents. As this case illustrates, this court does not “automatically” receive copies of trial court orders granting trial counsel leave to withdraw and appointing appellate counsel. To address the problem that we highlight in this order, we offer three simple guidelines for the trial courts and The Bar. First, when a trial court appoints an attorney to represent a parent in this court in a dependency or TPR case, the trial court should send this court a copy of the order. Second, because the trial courts may at times overlook this responsibility, it would be prudent for trial counsel who has been granted leave to withdraw to send this court copies of any trial court order granting leave to withdraw and appointing appellate counsel. Absent receipt of such copies, this court will regard the attorney who signed the notice of appeal as the attorney of record for the parent until appellate counsel makes an appearance in this court. Third, the attorney appointed as appellate counsel should promptly file a notice of appearance in this court and attach a copy of the trial court’s order of appointment.
We believe that if the trial courts and counsel will follow these simple guidelines, we can avoid further repetitions of the unacceptable situation where this court does not know the identity of the attorney who is responsible for representing the parent or parents in a juvenile dependency or TPR case.
Order to show cause discharged.
DAVIS, VILLANTI, and WALLACE, JJ., Concur.

. The names that we use to designate these two attorneys are fictitious. Because we impose no sanctions on the attorneys to whom we directed our order to show cause, we do not wish to single them out in a published order.

. See ch. 90-309, §§ 1, 6, at 2514-16, Laws of Fla.